JUDGE JONES    12 CV 4820

David N. Mair [DM-8883]
KAISER SAURBORN & MAIR, P.C.
111 Broadway, 18th Floor
New York, New York 10006
(212) 338-9100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MARAT VALIEV,

                    Plaintiff,

   -against-                            **COMPLAINT**

BROAD STREET CAPITAL GROUP LLC and
BROAD STREET CAPITAL LLC,
                                     (Jury Trial Demanded)

                    Defendants.
-----------------------------------------------------------x

      Plaintiff, Marat Valiev, by his attorneys, Kaiser Saurborn & Mair, P.C., as and for his complaint against the defendants, Broad Street Capital Group LLC and Broad Street Capital LLC, alleges as follows:

## PARTIES AND VENUE

    1.    Plaintiff, Marat Valiev, is a citizen of Russia.

    2.    Defendant, Broad Street Capital Group LLC ("BSCG"), is a limited liability company organized under the laws of the State of Delaware that has ceased to be in good standing. BSCG's principal place of business is in the City, County and State of New York.

    3.    Defendant, Broad Street Capital LLC ("BSC") is a limited liability company organized and existing under the laws of the State of New York with its principal place of business in the City, County and State of New York.

4. Upon information and belief, BSCG and BSC are both citizens of the State of New York.

5. The matter in controversy exceeds the sum or value of $75,000.

6. This Court has jurisdiction over this action Pursuant to 28 U.S.C. § 1332(a)(2).

7. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391 because it is a District in which the defendants reside and is a District in which a substantial part of the events giving rise to the claims asserted herein occurred.

8. This is an action to recover wages and other payments owed to plaintiff as a result of periods during which he served as an employee and an independent contractor of defendants.

## FACTS GIVING RISE TO THE CAUSES OF ACTION

### A. Defendant's Failure to Pay Plaintiff for Pre-February 2009 Independent Contractor Work

9. Defendants hold themselves out as a firm that offers merchant banking, project finance and other professional business services

10. Mr. Valiev holds both doctorate and masters degrees in economics and has extensive experience in the financial services field in Russia. In addition, he received an MBA in international business from Holt International Business School in the United States.

11. BSCG agreed to hire Mr. Valiev as an Independent Associate at the rate of $4,200 per month for the period April 15, 2008 through October 1, 2008 (hereafter referred to as the "Independent Contractor Arrangement"). BSCG subsequently extended the term of the Independent Contractor Arrangement through November 17, 2008 for a total period of seven months.

12. During the period of the Independent Contractor Arrangement plaintiff worked on six client assignments.

13. Although the payments were always late – and several checks were initially dishonored by BSCG's bank before being replaced by BSCG – BSCG ultimately paid Mr. Valiev at the agreed monthly rate for four of the seven months of the Independent Contractor Arrangement.

14. However, despite repeated requests, the remaining three months' payments totaling $12,600 were never paid.

**B.     Defendant's Failure to Pay Plaintiff Pursuant to the Terms of a February 2009 Employment Agreement**

15. In September 2008, while Mr. Valiev was working as an independent contractor, he and BSCG negotiated the terms of an employment agreement ("Employment Agreement"). The Employment Agreement was executed by both parties in October 2008. A copy of the Employment Agreement is annexed hereto as Exhibit "A."

16. The Employment Agreement provided that the term of Mr. Valiev's employment "shall commence as of February 1st, 2009 and shall continue through September 30th, 2011 unless earlier terminated pursuant to [section 6]" (Exhibit A, Section 3)

17. Pursuant to the terms of the Employment Agreement, on February 1, 2009 Mr. Valiev began work for defendants as a Senior Associate in their Project Finance Group.

18. Section 6 of the Employment Agreement provided that it could be terminated early only in the event that: (a) written notice of termination was provided by one party to the other; or (b) the parties mutually agreed in writing to such early termination. (Exhibit A, Section

6)

19. At no time prior to September 30, 2011 did either party ever provide written notice of termination.

20. At no time prior to September 30, 2011 did the parties mutually agree to the early termination of the Employment Agreement.

21. Pursuant to Section 4 of the Employment Agreement, BSCG was required to pay Mr. Valiev an annual salary of $70,000 and an annual bonus of $27,000 during the term of the agreement.

22. In return for such compensation, the Employment Agreement required Mr. Valiev "to provide financial professional services and other services to [BSCG] and its affiliates as may be reasonably requested by [its] Members." (Exhibit A, Section 1.a) The services were to include "financial modeling, international accounting rules, financial analysis, business plan and investment memorandum development and preparation." (Exhibit A, Section 1.b)

23. Throughout the term of the Employment Agreement Mr. Valiev provided all services requested by BSCG.

24. The Employment Agreement did not require Mr. Valiev to work regular or full-time hours for BSCG. Rather, the agreement required that Mr. Valiev "devote appropriate time, energies and skills to those duties called for hereunder" and that Mr. Valiev "devote such time as is reasonably required to fulfill his duties" under the agreement. (Exhibit A, Section 2.a)

25. Throughout the term of the Employment Agreement Mr. Valiev always promptly performed all work requested by defendants on a timely basis and always devoted such time as was required to fulfill his duties under the agreement.

4

26. Indeed, Mr. Valiev worked far in excess of a 40-hour work week for BSCG during certain periods of the contract term, including being available in Russia around the clock to coordinate with US and European time zones and working through weekends on certain projects.

27. From February 2009 through the end of the term of the Employment Agreement, Mr. Valiev worked on 12 separate projects for defendants and had lesser involvement in certain other projects. On a number of these projects he was assigned, and performed, the lead role on behalf of defendants.

28. However, during the term of the Employment Agreement BSCG failed to make payment of any of Mr. Valiev's salary or bonuses as required by the Employment Agreement.

29. In July 2009 Mr. Valiev discussed the possibility of resigning with BSCG's Managing Director, Alexander Gordin, but Gordin expressly asked him not to resign and promised that he would be paid by September 2009. However, despite Gordin's promise no payments were forthcoming from defendants.

30. During the term of the Employment Agreement Gordin repeatedly assured Mr. Valiev that, as soon as BSCG received payments from its clients, it would meet its contractual commitment to pay Mr. Valiev.

31. For example, on February 13, 2010, Gordin stated to Mr. Valiev: "I expect to get you back on monthly retainer from first moneys received and if we sustain the pace, continue that without interruption."

32. Similarly, in an email dated April 19, 2010, Gordin stated that a client "will pay us [a] $30k retainer as soon as the application is completed and half of that retainer is earmarked for you."

33. At no time did Mr. Valiev ever agree that payment of his contractual salary would be contingent upon any other event, including the payment of any amounts by clients of BSCG

34. Despite Gordin's repeated promises, and BSCG's ongoing contractual obligation, throughout the entire term of the Employment Agreement defendants failed to pay to Mr. Valiev any of the salary or bonus payments due under the terms of that agreement.

35. In October 2011, following the end of the contract term, Mr. Valiev once again insisted that BSCG pay him for the work he had performed. During these discussions Gordin acknowledged that Mr. Valiev "[has] always been there when needed" and "not only should [Mr. Valiev] be compensated for the work [he has] done, but also I would like [him] to be part of BSCG as it recovers and rebuilds."

36. Moreover, Gordin acknowledged that Mr. Valiev "certainly invested enough of [himself] and has proven to be a very reliable person through this nightmare of a period." However, Gordin claimed that paying Mr. Valiev the amount he was owed under the Employment Agreement would "bankrupt" BSCG.

37. No agreement was ever reached between BSCG and Mr. Valiev regarding a settlement of his claim for payment or the terms on which he might work for BSCG going forward.

38. Finally, on February 9, 2012, BSCG made a single payment to Mr. Valiev of $4,000. This was the first and last payment it ever made towards the sums due pursuant to the Employment Agreement.

39. Pursuant to the Independent Contractor Arrangement and the Employment Agreement, BSCG currently owes Mr. Valiev the principal sum of $267,400 comprised of the

following amounts:

| | |
|---|---:|
| Independent Contractor Arrangement | 12,600 |
| Employment Agreement - Salary (Feb 2009-Sept 2011) | 186,700 |
| Employment Agreement - Bonus (2.67 years @ $27,00/year) | 72,100 |
| Less: February 2012 payment | (4,000) |
| Total | 267,400 |

## FIRST CAUSE OF ACTION
(Breach of Contract)

40. Pursuant to Fed. R. Civ. P. 10(c), plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" as if repeated and incorporated herein.

41. By reason thereof, defendant has breached its contractual obligations under the Independent Contractor Arrangement. As a direct result thereof, plaintiff has suffered damages in an amount to be determined at trial but not less than $12,600.

## SECOND CAUSE OF ACTION
(Breach of Contract)

42. Pursuant to Fed. R. Civ. P. 10(c), plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" as if repeated and incorporated herein.

43. By reason thereof, defendant has breached its contractual obligations under the Employment Agreement. As a direct result thereof, plaintiff has suffered damages in an amount to be determined at trial but not less than $254,800.

## THIRD CAUSE OF ACTION
(New York Labor Law)

7

44. Pursuant to Fed. R. Civ. P. 10(c), plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" as if repeated and incorporated herein.

45. The Employment Agreement confirmed that plaintiff's "status" was "that of a salaried employee." (Exhibit A, Section 2.b)

46. Plaintiff meets the definition of an "employee" under New York Labor Law § 191.

47. Defendants meet the definition of "employer" under New York Labor Law § 191.

48. Defendants failed and refused to pay plaintiff the agreed-upon wages to which he was entitled for the period February 1, 2009 through September 30, 2011.

49. By reason thereof, defendant has violated New York Labor Law §§ 193(1) and 198.

50. As a direct result thereof, plaintiff has suffered actual damages in an amount to be determined at trial but not less than $254,800.

51. Pursuant to New York Labor Law § 198(1-a), plaintiff is also entitled to additional liquidated damages in the amount of $254,800

### FOURTH CAUSE OF ACTION
(Quantum Meruit)

52. Pursuant to Fed. R. Civ. P. 10(c), plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" as if repeated and incorporated herein.

53. Upon information and belief, plaintiff performed some or all of the foregoing services for BSCG's affiliate, defendant BSC.

54. Plaintiff performed the foregoing services in good faith with the expectation of

compensation therefor.

55. Defendant BSC accepted said services.

56. The reasonable value of said services exceeded $267,400.

57. Defendant BSC failed to pay plaintiff for said services.

**WHEREFORE**, plaintiff hereby demands judgment against defendant as follows:

(i) On his first cause of action, awarding plaintiff damages in an amount to be determined at trial but not less than $12,600;

(ii) On his second cause of action, awarding plaintiff damages in an amount to be determined at trial but not less than $254,800;

(iii) On his third cause of action, awarding plaintiff actual and liquidated damages in an amount to be determined at trial but not less than $509,600;

(iv) On his fourth cause of action, awarding plaintiff damages in an amount to be determined at trial but not less than $267,400;

(v) Awarding plaintiff his attorneys fees and costs incurred in this action pursuant to New York Labor Law § 198;

(vi) Awarding plaintiff pre-judgment interest pursuant to New York CPLR 5001;

(vii) Awarding plaintiff the costs and disbursements of this action; and

(viii) For such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a trial by jury.

Dated: New York, New York
June 18, 2012

                                  KAISER SAURBORN & MAIR, P.C.
                                  Attorneys for plaintiff

By: _____
                                  David N. Mair [DM-8883]
                                111 Broadway, 18th Floor
                                New York, New York 10006
                                (212) 338-9100

# Exhibit A

# Employment Agreement

This Agreement (the "Agreement"), dated as of October 1st, 2008, is made by and between Broad Street Capital Group, LLC, a Delaware limited liability company ("BSCG") and Mr. Marat Valiev (the "Associate").

WHEREAS, BSCG and its affiliates are in the business of international project finance and professional business services and

WHEREAS, BSCG requires and will continue to require services relating to the financial modeling, financial analysis, project finance structuring and business plan, development and preparation; and

WHEREAS, BSCG and the Associate desire to enter into an agreement whereby the Associate will provide certain professional finance services to BSCG and its affiliates on the terms and conditions hereinafter set forth; and

WHEREAS, the Associate is willing to provide such services for BSCG and its affiliates.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and covenants herein contained, the parties agree as follows:

1. <u>Engagement.</u>

    a. The Associate hereby agrees to provide financial professional services and other services to BSCG and its affiliates as may be reasonably requested by the Members.

    b. Without limiting the generality of the foregoing, the Associate agrees to advise the Company with respect to: financial modeling, international accounting rules, financial analysis, business plan and investment memorandum development and preparation.

2. <u>Extent of Services, Status.</u>

    a. The Associate agrees to perform such services to the best of his ability and in a diligent and conscientious manner and to devote appropriate time, energies and skill to those duties called for hereunder during the term of this Agreement and in connection with the performance of such duties to act in a manner consistent with the primary objective of maximizing the profitability of BSCG and its affiliates. The Associate agrees to devote such time as is reasonably required to fulfill its duties hereunder.

b. Associate's status under this Agreement shall be that of a salaried employee. BSCG will withhold or pay on behalf of Associate (i) federal, state or local income taxes; and (ii) any other payroll tax as may be required by law. Associate warrants and represents that he has complied with all federal, state and local laws regarding business permits and licenses that may be required for him to perform the work as set forth in this Agreement.

3. Term.

The engagement of the Associate hereunder by BSCG shall commence as of the February 1st, 2009 and shall continue through September 30th 2011, unless earlier terminated pursuant to Section 6 hereof. The engagement of the Associate may be renewed for periods of one (1) year or longer upon mutual agreement by the parties in writing.

4. Compensation

a. As compensation for the services contemplated herein and for performance rendered by the Associate of its duties and obligations hereunder, BSCG shall pay to the Associate an annual salary of $ 70,000 plus a bonus of $ 27,000 fee on the 16th day and the last day of each calendar month during the Term set forth in Section 3.

5. Reimbursement of Expenses

BSCG shall pay or reimburse the Associate for all expenses reasonably incurred by it in furtherance of its duties hereunder, except that any single expense exceeding $100 must be authorized by BSCG prior to the date on which they are incurred by the Associate, which authorization may be withheld by BSCG in its sole discretion. BSCG shall be under no obligation to pay or reimburse any expense of the Associate which has not been authorized by BSCG in accordance with the terms of this Section 5. BSCG will make reimbursement for authorized expenses within fourteen days of presentation by the Associate from time to time of appropriate documentation evidencing such expenditures.

6. Duties of BSCG.

BSCG shall provide Associate, on a regular and timely basis, with all approved data and information about it, its subsidiaries, its management, its products and services and its operations as shall be reasonably requested by Associate, and shall advise Associate of any facts which would affect the accuracy of any data and information previously supplied pursuant to this paragraph.

7. Termination.

This Agreement shall be terminated as follows:

   a.   15 days after written notice of termination is given by either party at any time provided, however, that BSCG shall pay to Associate that portion of the salary earned through the effective date of such termination.

   b.   On such date as is mutually agreed by the parties in writing.

   c.   Upon expiration of the Term as set forth in Section 3, if the Term has not been extended thereunder.

8. Representations and Indemnification.

   a.   BSCG shall be deemed to have been made a continuing representation of the accuracy of any and all facts, material information and data which it supplies to Associate and acknowledges its awareness that Associate will rely on such continuing representation in disseminating such information and otherwise performing its advisory functions. Associate in the absence of notice in writing from BSCG will rely on the continuing accuracy of material, information and data supplied by BSCG. Associate represents that he has knowledge of and is experienced in providing the aforementioned services.

   b.   The Associate agrees that neither BSCG nor any of its affiliates, nor any member, officer, partner, agent or employee of BSCG or any of its affiliates, nor any person controlling BSCG or any of its affiliates, shall have any liability to the Associate for or in connection with such engagement except for such liability for losses, claims, damages, liabilities or expenses incurred by Associate which is finally judicially determined to have resulted primarily from the Company's wrongful conduct, bad faith or negligence.

9. Confidential Information.

   The Associate shall not, at any time during or following expiration or termination of its engagement hereunder (regardless of the manner, reason, time or cause thereof) directly or indirectly disclose or furnish to any person not entitled to receive the same for the immediate benefit of BSCG any trade secrets or confidential information including, without limitation, information as to the business methods, operations and affairs of BSCG or its affiliates, the names, addresses or requirements of any of its customers and suppliers. All such trade secrets and confidential information including, without limitation, information as to the names, addresses or requirements of any of BSCGs customers and suppliers, acquired or compiled by BSCG or the Associate during the term of this Agreement shall be the exclusive property of BSCG.

10. Covenants.

   Associate agrees to (a) faithfully and diligently do and perform the acts and duties required in connection with its engagement hereunder, and (b) not engage in

any activity that is or likely is contrary to the welfare, interest or benefit of the business now or hereafter conducted by BSCG.

11. <u>Binding Effect.</u>

This Agreement will inure to the benefit of and shall be binding upon the parties hereto and their respective successors or assigns (whether resulting from any re organization, consolidation or merger of either of the parties or any assignment to a business to which all or substantially all of the assets of either party are sold).

12. <u>Entire Agreement.</u>

This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, supersedes all prior agreements and understandings with respect thereto and cannot be modified, amended, waived or terminated, in whole or in part, except in writing signed by the party to be charged.

13. <u>Construction.</u>

While the parties hereto believe that the terms hereof are fair, reasonable and enforceable in all respects, it is agreed that any provision of this Agreement which is held to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other Jurisdiction. In addition to any other remedy which BSCG may have at law or in equity, BSCG shall be entitled to injunctive relief for a breach of Sections 7 and 8 (b) of this Agreement by the Associate.

14. <u>Notices.</u>

All notices required to be given under the terms of this Agreement or which any of the parties desires to give hereunder shall be in writing and personally delivered or sent by registered or certified mail, return receipt requested, or sent by facsimile transmission, addressed as follows:

If to Associate:
    Marat Valiev
    41 Belmont street # 15
    Somerville MA 02143

If to BSCG:
    Alexander Gordin
    Managing Director
    Broad Street Capital Group LLC.
    140 Broadway, 46th Floor
    New York, NY 10005

Any party may designate a change of address at any time by giving written notice thereof to the other parties.

15. <u>Miscellaneous</u>.

This Agreement:

(a) shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns;

(b) may not (except as provided in Section 9 hereof) be assigned by either party hereto without the prior written consent of the other party (any purported assignment hereof in violation of this provision being null and void);

(c) may be executed in any number of counterparts, and by any party on separate counterparts, each of which as so executed and delivered shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall not be necessary in making proof of this Agreement as to any party hereto to produce or account for more than one such counterpart executed and delivered by such party;

(d) may be amended, modified or supplemented only by a written instrument executed by all of the parties hereto;

(e) embodies the entire agreement and understanding of the parties hereto in respect of the transactions contemplated hereby and supersedes all prior agreements and understand ings among the parties with respect thereto; and

(f) shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflict of laws principles thereof.

IN WITNESS WHEREOF, the parties hereto have executed this Consulting Agreement as of the date first above written.

_____ 10/1/08
BSCG
by: Alexander Gordin, Managing Director

_____ 10/27/2008

by: Marat Valiev